MEMORANDUM OPINION

No. 04-05-00665-CR

Kwame TERRY,

Appellant

v.

The STATE of Texas ,

Appellee

From the 187th Judicial District Court, Bexar County, Texas

Trial Court No. 2004-CR-4169A

Honorable Raymond Angelini , Judge Presiding




Opinion by: Alma L. López, Chief Justice



Sitting: Alma L. López, Chief Justice

 Catherine Stone , Justice

 Sarah B. Duncan , Justice



Delivered and Filed: October 4, 2006



AFFIRMED

 Kwame Terry was convicted by a jury of burglary of a habitation with intent to commit aggravated robbery. The sole issue
presented on appeal is whether the trial court erred in denying Terry's motion to suppress because a witness's in-court
identification of Terry was tainted by an overly suggestive photo identification. We affirm the trial court's judgment.

 A two-step analysis is applied in determining the admissibility of an in-court identification that is challenged by a
defendant. Loserth v. State, 985 S.W.2d 536, 543 (Tex. App.--San Antonio 1998, pet. ref'd). First, we consider whether the
pretrial identification procedure was impermissibly suggestive. Id. Second, if the procedure was impermissibly suggestive,
we determine whether the procedure gives rise to a very substantial likelihood of irreparable misidentification. Id. The
defendant bears the burden to prove these two elements by clear and convincing evidence. Id. 

 Reliability is the lynchpin question in determining admissibility of identification testimony. Id. Testimony is reliable if the
totality of the circumstances reveals no substantial likelihood of misidentification despite a suggestive pretrial procedure. 
Id. When the challenge to the in-court identification is made in a motion to suppress, we must examine the record as it
existed at the time of the suppression hearing. O'Hara v. State, 27 S.W.3d 548, 551 (Tex. Crim. App. 2000);McAllister v.
State, 34 S.W.3d 346, 349 (Tex. App.--Texarkana 2000, pet. ref'd).

 Under the first step in our analysis, the officers who responded to a burglary in progress observed two individuals fleeing
across the backyard of the residence of the victim, who is the witness in question. The two suspects were caught and
arrested, and a digital camera was used to photograph the two suspects. The camera was taken to the victim's residence, and
the victim was shown the two digital photographs of the suspects and asked if she recognized either of them. "The use of a
lone photograph, without any of the traditional safeguards of a lineup or a photographic array, is inherently suspect and has
been uniformly condemned by courts." Loserth, 985 S.W.2d at 543-44. Accordingly, Terry satisfied his burden in proving
that the photographic display was impermissibly suggestive. See id.

 In applying the second step in our analysis, the following five nonexclusive factors are applied in determining whether an
impermissibly suggestive procedure gave rise to a substantial likelihood of irreparable misidentification: (1) the opportunity
of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the
witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and
(5) the length of time between the crime and the confrontation. Id. at 543 (citingNeil v. Biggers, 409 U.S. 188, 199 (1972)). 
The five factors are issues of historical fact and are considered deferentially in a light favorable to the trial court's ruling. Id. 
The factors, viewed in the light most favorable to the trial court's ruling, however, must be weighed de novo against the
corrupting effect of the suggestive pretrial procedure. Id.

 The witness's opportunity to view Terry and her degree of attention were both high in that she saw Terry face-to-face for a
few minutes, and Terry was the man who tied her up. The witness was shown the photograph within thirty minutes after the
time of the crime, and there was no evidence to suggest that the witness was uncertain in identifying Terry. In response to
whether the witness had given a description of Terry prior to being shown the photographs, the witness responded:

 I gave him a description. I don't know whether it was before or after looking at the pictures, but I think I had described
him, both, before. And the, of course, they asked for statements later, and I described him again. But, yes.



Viewing the facts in the light most favorable to the trial court's ruling, the trial court did not err in concluding that Terry
failed to meet his burden of showing by clear and convincing evidence that the impermissibly suggestive procedure gave
rise to a substantial likelihood of irreparable misidentification.

 The trial court's judgment is affirmed.

 Alma L. López, Chief Justice

DO NOT PUBLISH